IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CHARLES CHATMAN,

    Plaintiff,     No. CIV S-06-2912 LKK EFB P

    vs.

TOM FELKER, et. al.,

    Defendants.     <u>ORDER AND</u>
<u>FINDINGS AND RECOMMENDATIONS</u>

_____/

    Plaintiff is a state prisoner proceeding without counsel in an action brought under 42 U.S.C. § 1983. Currently pending before the court is defendants'[1] February 4, 2010 motion to dismiss some of the claims in this action on the grounds that plaintiff failed to exhaust available administrative remedies and failed to state a claim upon which relief could be granted. For the reasons explained below, the court finds that the motion to dismiss should be denied.

    Also before the court is plaintiff's April 26, 2010, motion for court intervention in serving defendant Patton. As discussed below, the court grants this motion.

////

---

[1] The motion is brought by defendants T. Felker, M.D. McDonald, R. Rath, A. Amero, W. Koening, A. Pfadt, M. Keating, Laguna, T. Perez, J. Stiles, E. Guimond, R. Ross, C. Houghland, T. Dillard, E. Park, L. Gordon, J.S. Avila, S.M. Roche, R. Cox, G. James, and C.K. Harvey.

**I.      Failure to Exhaust**

Defendants argue that plaintiff has failed to exhaust a number of his claims.

**A.      Exhaustion Legal Standards**

Pursuant to the Prison Litigation Reform Act of 1995 ("PLRA"), "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This requirement is mandatory and unequivocal. *Booth v. Churner*, 532 U.S. 731, 741 (2001); *McKinney v. Carey*, 311 F.3d 1198, 1200 (9th Cir. 2002) ("Congress could have written a statute making exhaustion a precondition to judgment, but it did not. The actual statute makes exhaustion a precondition to *suit*." (citation omitted)). A prisoner seeking leave to proceed *in forma pauperis* in an action challenging the conditions of his confinement brings an action for purposes of 42 U.S.C. § 1997e when he submits his complaint to the court. *Vaden v. Summerhill*, 449 F.3d 1047, 1050 (9th Cir. 2006). Therefore, a prisoner must exhaust available administrative remedies before filing any papers in federal court and is not entitled to a stay of judicial proceedings in order to exhaust. *Id.* at 1051; *McKinney*, 311 F.3d 1198.

The failure to exhaust nonjudicial administrative remedies as required by § 1997e(a) is not jurisdictional. *Wyatt v. Terhune*, 315 F.3d 1108, 1117 n.9 (9th Cir. 2003). Nor does § 1997e(a) require a plaintiff to plead exhaustion. *Id.* at 1119. Rather, "§ 1997e(a) creates a defense – defendants have the burden of raising and proving the absence of exhaustion." *Id.* The Ninth Circuit determined in *Wyatt* that because the defense of failure to exhaust "is not on the merits" and summary judgment "is on the merits," the defense should be treated as a matter in abatement[2] to be resolved pursuant to a motion made under "unenumerated Rule 12(b)." *Id.*

---

[2] A "matter in abatement" is "the suspension or defeat of an action for a reason unrelated to the merits of the claim." *Andrews v. King*, 398 F.3d 1113, 1118 (9th Cir. 2005). It has its roots in the common-law "plea in abatement," abolished by Fed. R. Civ. P. 7(c). Rule 7 "unceremoniously abolishes a great deal of ancient procedural dogma that has little place in a

The Ninth Circuit stated that "[i]n deciding a motion to dismiss for a failure to exhaust nonjudicial remedies, the court may look beyond the pleadings and decide disputed issues of fact." *Id.* at 1119-20.

The United States Supreme Court confirmed in *Jones v. Bock*, 549 U.S. 199, 216 (2007), that failure to exhaust under the PLRA is an affirmative defense. If the affirmative defense can be decided on the pleadings alone, i.e., the allegations of the complaint establishes the fact that there has been no exhaustion, a motion under Rule 12(b)(6) is appropriate. *Id.* at 215. Using the example of a motion to dismiss based on a statute limitations defense, the Court stated:

> A complaint is subject to dismissal for failure to state a claim if the allegations, taken as true, show the plaintiff is not entitled to relief. If the allegations, for example, show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim; that does not make the statute of limitations any less an affirmative defense, see Fed. Rule Civ. Proc. 8(c). Whether a particular ground for opposing a claim may be the basis for dismissal for failure to state a claim depends on whether the allegations in the complaint suffice to establish that ground, not on the nature of the ground in the abstract.

*Id*.

However, where the facts supporting the affirmative defense are not established by the allegations of the complaint and instead require the presentation of evidence outside the pleadings (including failure to exhaust as required by 42 U.S.C. § 1997e(a)) motion raising the

---

streamlined litigation system," Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*: Civil 3d § 1181, including pleas in abatement. *Black's Law Dictionary* 4 (6th ed. 1990). The "plea in abatement" is an archaic common law "plea which, without disputing merits of plaintiff's claim, objects to place, mode or time of asserting it. It allows plaintiff to renew suit in another place or form, or at another time, and does not assume to answer an action on its merits, or deny existence of a particular cause of action on which plaintiff relies." *Black's Law Dictionary* 1151 (6th ed. 1990). The Advisory Committee Notes to Rule 7(c) state that all statutes using the word "plea" are "modified in form by this rule." Thus, for example, the Revision Notes to 28 U.S.C. § 2105 (West 2006), which prohibits reversal of a District Court's ruling on non-jurisdictional "matters in abatement" in the Supreme Court and Circuit Courts of Appeals states, "Rule7(c) of the Federal Rules of Civil Procedure abolished all pleas, and the rules adopted the motion as a substitute therefor. The words 'matters in abatement' were, therefore substituted for the abolished 'plea in abatement' and 'plea to the jurisdiction.'" Modernly, a party makes a motion under Rule 12 or Rule 41, as appropriate, instead of making a plea in abatement. *See Black's Law Dictionary* 4, 1151-1152 (6th ed. 1990) ("abatement of action," and "plea in abatement").

3

defense is properly considered under the standards for summary judgment, with disputed material factual issues reserved for trial or an evidentiary hearing so that credibility over disputed issues of material fact are resolved on the basis of live testimony and not paper.[3] Fed. R. Civ. P. 12(d) (where a party presents affidavits or other matters outside the pleadings in support of its motion, the court must treat the motion "as one for summary judgment under Rule 56"), 56(b); *Panero v. City of North Las Vegas*, 432 F.3d 949, 952 (9th Cir. 2005).[4] These fundamental principles under the Federal Rules of Civil Procedure are not changed by the PLRA. The Supreme Court in *Jones* made clear that, "beyond the departures specified by the PLRA itself," nothing in the PLRA suggests that usual procedural practices should not be followed and cautioned that departures from the usual procedural requirements are to be expressly made by

---

[3] The reasoning in *Wyatt* for adhering to Rule 12(b) appears to have been that frequently a motion for "summary judgment is on the merits," and a failure to exhaust is independent of the substantive claims before the court. *Wyatt*, 315 F.3d at 1119. But, a motion asserting an affirmative defense, even when it does not address the merits of the substantive claims, should be brought under Rule 56, with it's procedural safeguards for assuring that credibility is not decided on paper, if the motion relies upon matters extrinsic to the complaint to establish the factual predicate for the defense. Motions challenging exhaustion of administrative remedies frequently rely on declarations and exhibits that are extrinsic to the complaint. Regardless of whether judgment is sought on the merits or whether the motion seeks to bar consideration of the merits based on a technical ground that precludes reaching the merits (i.e., exhaustion, issue or claim preclusion, a statute of limitations, etc.), the determining factor is whether the factual predicate for the motion is based on the text of the pleading or instead depends upon evidence submitted with the motion. *See Jones*, 549 U.S. at 215 ("A complaint is subject to dismissal for failure to state a claim if the allegations, taken as true, show the plaintiff is not entitled to relief.").

[4] Several other Circuits have applied summary judgment principles when the defense of failure to exhaust cannot be decided on the pleadings. *See Brownell v. Krom*, 446 F.3d 305, 310 (2d Cir. 2006) (addressing exhaustion at summary judgment); *Williams v. Beard*, 482 F.3d 637, 639 (3d Cir. 2007) (reversing grant of summary judgment on exhaustion and remanding for further proceedings); *Hinojosa v. Johnson*, 277 Fed. Appx. 370, 379-80 (5th Cir. May 1, 2008) (addressing exhaustion at summary judgment); *Foulk v. Charrier*, 262 F.3d 687, 697-98 (8th Cir. 2001) (reviewing evidence elicited at trial as to whether prisoner exhausted available remedies); *Fields v. Okla. State Penitentiary*, 511 F.3d 1109, 1112 (10th Cir. 2007) (addressing exhaustion at summary judgment); *but see Bryant v. Rich*, 530 F.3d 1368 (11th Cir. 2008) (finding that PLRA exhaustion should be treated as a matter in abatement and should be decided on a Rule 12(b) motion, even when factual disputes exist); *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008) (rejecting the summary judgment and the Rule 12(b) approaches to PLRA exhaustion and instead determining that once a PLRA exhaustion defense is raised, a special evidentiary hearing should be held to address that defense before litigation on the merits proceeds).

Congress. *Jones*, 549 U.S. at 212, 214-16.

Thus, it appears that the requirement under Rule 12(b) that motions raising affirmative defenses that require the submission of declarations or other matters extrinsic to the complaint require that the motion be treated as a Rule 56 motion for summary judgment, applies to motions raising the failure a of prisoner to exhaust administrative remedies. Indeed, the Ninth Circuit recognized in *Wyatt* that when the district court looks beyond the pleadings to a factual record, which commonly occurs in deciding an exhaustion motion, the court must do so under "a procedure closely analogous to summary judgment." *Wyatt*, 315 F.3d at 1120, n.14.

Here, defendant's motion necessarily requires the court to consider the affidavits and exhibits presented for the purpose of proving the absence of exhaustion. Accordingly, the court analyzes the motion, as *Wyatt* suggests, under a standard "closely analogous to summary judgment." 315 F.3d at 1120, n.14. If, under that standard, the court concludes that the prisoner has failed to exhaust administrative remedies, the proper remedy is dismissal without prejudice. *Id.* at 1119-20.

**B. Summary Judgment Standards**

Under Rule 56, resolution of the exhaustion issue in favor of defendants is appropriate when it is demonstrated that there is "no genuine issue as to any material fact" over the question. Fed. R. Civ. P. 56(c). The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims or defenses. *Celotex Cop. v. Catrett*, 477 U.S. 317, 323-24 (1986). Thus, the rule functions to "'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments). Under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (*en banc*). If the moving party meets its burden with a properly supported

motion, the burden then shifts to the opposing party to present specific facts that show there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986); *Auvil v. CBS "60 Minutes"*, 67 F.3d 816, 819 (9th Cir. 1995).

For the opposing party to establish a genuine issue of fact the factual dispute must meet two requirements. First, the dispute must be over a fact(s) that is material, i.e., one that makes a difference in the outcome of the case. *Anderson v. Liberty Lobby, Inc*., 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). Whether a factual dispute is material is determined by the substantive law, which here involves the question of whether plaintiff has met the exhaustion requirement. *Id.*

Second, the dispute must be genuine. In this regard, the court must focus on which party bears the burden of proof on the factual dispute in question. Where the opposing party bears the burden of proof on the issue in dispute, conclusory allegations, unsupported by factual material, are insufficient to defeat the motion. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989). Instead, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue for trial. *Anderson*, 477 U.S. at 249; *Devereaux*, 263 F.3d at 1076. More significantly, to demonstrate a genuine factual dispute the record relied on by the opposing party must be such that a fair-minded jury "could return a verdict for [him] on the evidence presented." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248, 252. If the evidence presented could not support a judgment in that party's favor, there is no genuine issue. *Id.*; *Celotex Corp. v. Catrett*, 477 U.S. at 323. Thus, Rule 56 serves to screen cases lacking any genuine dispute over an issue that affects the outcome of the case

Finally, focus on where the burden of proof lies as to the issue in question is crucial to summary judgment procedures. "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" *Id.* Indeed,

summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See id.* at 322. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id*. at 323. Here, it is the moving parties, the defendants, who bear the burden of proving the failure of plaintiff to exhaust.

On October 9, 2009, the court advised plaintiff of the requirements for opposing a motion to dismiss for failure to exhaust available administrative remedies as well as a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), *cert. denied*, 527 U.S. 1035 (1999); *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988); *Wyatt,* 315 F.3d at 1120, n.14.

**C.  Exhaustion Under California Law**

California prisoners may appeal "any departmental decision, action, condition, or policy which they can demonstrate as having an adverse effect upon their welfare." Cal. Code Regs. tit. 15, § 3084.1(a).

> To initiate the process, an inmate must fill out a simple form, Dept. of Corrections, Inmate/Parolee Appeal Form, CDC 602 (12/87) (hereinafter Form 602), that is made "readily available to all inmates." Cal. Code Regs. tit. 15, § 3084.1(c) (2004). The inmate must fill out two parts of the form: part A, which is labeled "Describe Problem," and part B, which is labeled "Action Requested." Then, as explained on Form 602 itself, the prisoner "must first informally seek relief through discussion with the appropriate staff member." [] The staff member fills in part C of Form 602 under the heading "Staff Response" and then returns the form to the inmate.
>
> If the prisoner is dissatisfied with the result of the informal review, or if informal review is waived by the State, the inmate may pursue a three-step review process. *See* Cal. Code Regs. tit. 15, §§ 3084.5(b)-(d). Although California labels this three-step process "formal" review (apparently to distinguish this process from the prior step), the three-step process is relatively simple. At the first level, the prisoner must fill in part D of Form 602, which states: "If you are dissatisfied, explain below." [] The inmate then must submit the form, together with a few other documents, to the Appeals Coordinator within 15 working days-three weeks-of the action taken. *Id*., § 3084.6(c). This level may be bypassed by the

7

> Appeals Coordinator in certain circumstances. *Id*., § 3084.5(b). Within 15 work-days after an inmate submits an appeal, the reviewer must inform the inmate of the outcome by completing part E of Form 602 and returning the form to the inmate.
>
> If the prisoner receives an adverse determination at this first level, or if this level is bypassed, the inmate may proceed to the second level of review conducted by the warden. *Id*., §§ 3084.5(c), (e)(1). The inmate does this by filling in part F of Form 602 and submitting the form within fifteen work-days of the prior decision. Within ten working days thereafter, the reviewer provides a decision on a letter that is attached to the form. If the prisoner's claim is again denied or the prisoner otherwise is dissatisfied with the result, the prisoner must explain the basis for his or her dissatisfaction on part H of the form and mail the form to the Director of the California Department of Corrections and Rehabilitation within 15 working days. *Id*., § 3084.5(e)(2). An inmate's appeal may be rejected where "[t]ime limits for submitting the appeal are exceeded and the appellant had the opportunity to file within the prescribed time constraints." *Id*., § 3084.3(c)(6).

*Woodford v. Ngo*, 548 U.S. 81, 85-86 (2006). Generally, completion of the third level, the Director's Level of Review, exhausts the remedy. Cal. Code Regs. tit. 15, § 3084.1(a). All steps must be completed before a civil rights action is filed, unless a plaintiff demonstrates a step is unavailable to him; exhaustion during the pendency of the litigation will not save an action from dismissal. *McKinney*, 311 F.3d at 1200. The claim must be properly exhausted; therefore, an untimely or otherwise procedurally defective administrative grievance or appeal does not satisfy the exhaustion requirement. *Woodford*, 548 U.S. at 83-84.

**D.    Analysis**

Defendants argue that plaintiff has failed to exhaust a number of his claims. The level of detail in an administrative grievance necessary to properly exhaust a claim is determined by the prison's applicable grievance procedures. *Jones v. Bock*, 549 U.S. 199, 218 (2007). However, "when a prison's grievance procedures are silent or incomplete as to factual specificity, a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought." *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009). "A grievance need not include legal terminology or legal theories unless they are in some way needed to provide notice of the harm being grieved. A grievance also need not contain every fact necessary to prove each element of an eventual legal claim. The primary purpose of a grievance is to alert the prison to a problem

8

and facilitate its resolution, not to lay groundwork for litigation." *Id.*

Here, apparently in an effort to show that the prison's grievance procedures call for a higher level of detail, defendants submitted a declaration by D. Foston, the chief of the inmate appeal branch of the California Department of Corrections, stating, "In his appeal, the inmate must identify each individual against whom he raises a grievance, state each claim against each individual named in the appeal, and identify the relief requested. Failure to identify the individuals, claims, or form of relief will result in failure to exhaust those issues through the administrative appeals process." Dckt. No. 34, Ex. A. But Foston cites no authority supporting his position for this elevated standard. The appeal form itself states only "Describe problem," followed by eight blank lines, and "Action Requested" followed by four blank lines. If these instructions are intended to require a heightened standard as described by Foston, they fail to put a prisoner on notice that he must identify each individual, claim and form of relief or be barred from litigating his claims. Accordingly, the court must apply the standard announced by the Ninth Circuit: in order to exhaust his claims, plaintiff need only have alerted the prison to the nature of the wrong for which he claims relief.

Defendants' specific contention here is that plaintiff failed to exhaust his claim that defendant Keating violated his right of access to the courts by confiscating and destroying materials that plaintiff was required to submit to the courts. Dckt. No. 34 at 10-11. The record does not support this contention. Plaintiff's complaint alleges that he "mailed out seven civil complaints to the Kings County Sheriff," that Keating "censored the above correspondence . . . then sent it back to him opened"; and that, in retaliation, Keating confiscated twenty-one of plaintiff's outgoing civil complaints and prevented the complaints from being mailed. Dckt. No. 13 at 9-12. Plaintiff exhausted these exact claims in his internal appeals. *See* Dckt. No. 34, Ex. B, C. Defendants' argument that the mail did not qualify for state-paid postage is irrelevant to the exhaustion issue.

////

9

Defendants also argue that plaintiff's claim that defendants Avila and Keating confiscated and destroyed his legal materials in retaliation for plaintiff's having filed grievances is unexhausted because "nowhere in the Appeals . . . did plaintiff allege any acts were in retaliation for the filing of grievances." To the contrary, plaintiff's appeal states that "after a lengthy debate and evidence proving legitimacy of appellant's outgoing confidential mail . . . Keating and the litigating coordinator refused to comply, thereby denying appellant access to the courts, while holding his outgoing mail hostage from leaving the institution"; and that Keating harassed and threatened him, and stated "repeatedly that he would find somewhere else to put my outgoing confidential mail . . . such blatant misconduct is . . . *retaliation*."[5] Dckt. No. 34, Ex. B., Ex. C (emphasis added). The court finds that these appeals were sufficiently detailed to have alerted the prison to the nature of the wrongs at issue. Defendants have failed to meet their burden of proving that these claims are unexhausted.

For similar reasons, the court rejects defendants' argument that the following claims are unexhausted. Claim 4, that certain defendants confiscated plaintiff's property in retaliation for his filing of grievances, was exhausted by the appeals attached as Exhibits D and E to defendants' motion. Claims 5 and 6, that certain defendants left plaintiff in a holding cage for five hours while he was handcuffed and wearing only his undergarments and was intentionally exposed to cold winter air coming through an open door, in retaliation for his filing of grievances, was exhausted by the appeal attached as Exhibit F to defendants' motion. Claims 7, 8, 9, and 10, that certain defendants maintained a policy of forcing prisoners discharged from the medical clinic to administrative segregation to walk the distance in their undergarments; that certain defendants forced plaintiff to walk the distance in his undergarments in a blizzard; and that this was in retaliation for filing grievances; and that another defendant laughed at him

---

[5] This contradicts paragraph 13 of D. Foston's declaration, which states, "Neither Exhibit B, nor Exhibit C have plaintiff complaining that the acts were done in retaliation for his filing grievances."

1 instead of helping him warm up and dry off when he arrived in administrative segregation are
2 exhausted by the appeal attached as Exhibit G to defendants' motion.  Claim 11, that certain
3 defendants refused and delayed proper medical treatment for a medical condition affecting
4 plaintiff's left foot, was exhausted in the appeals attached as Exhibit I to defendants' motion.
5 Finally, claim 13, that defendant Stiles falsified official documents to reflect that plaintiff gave
6 his property away was exhausted in the appeals attached as Exhibit E to defendants' motion.

Accordingly, defendants' motion to dismiss must be denied as to the exhaustion issues.

## II. Failure to State a Claim Upon Which Relief Can be Granted

Defendants also move for dismissal of some of plaintiff's claims on the ground that they fail to state a claim on which relief can be granted.

### A. Statute of Limitations

Defendants argue that plaintiff's first claim, that defendant Avila interfered with his outgoing mail, is barred by the statute of limitations, as it is based on events that occurred in May of 2003.  This action was not filed until December 26, 2006.  Federal courts apply the forum state's personal injury statute of limitations for civil rights claims under 42 U.S.C. § 1983. *See Fink v. Shedler*, 192 F.3d 911, 914 (9th Cir. 1999).  The parties agree that a two-year statute of limitations applies to the claims in this case.  *See* Dckt. No. 34 at 16, Dckt. No. 13 at 12.  But plaintiff argues that his incarceration tolls the statute of limitations for two years.  *See* Cal. Civ. Proc. Code § 352.1.  Defendants have not addressed the issue.[6]  Accordingly, as the complaint was filed within four years of the incident, the court finds that the claim is not time-barred.

### B. Actual Injury

Defendants argue that plaintiff's claims regarding defendant Avila's interference with his outgoing mail and defendant Keating's confiscation and destruction of his legal materials fail for lack of actual injury.  To establish a violation of the right to access to the courts a prisoner must

---

[6] Defendants failed to file a reply to plaintiff's opposition brief and have not argued that plaintiff is not entitled to two years of tolling.

11

allege facts sufficient to show that: (1) a nonfrivolous legal attack on his conviction, sentence, or conditions of confinement has been frustrated or impeded, and (2) he has suffered an actual injury as a result. *Lewis v. Casey*, 518 U.S. 343, 353-55 (1996). An "actual injury" is defined as "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Id.* at 348; *see also Jones v. Blanas*, 393 F.3d 918, 936 (9th Cir. 2004).

Plaintiff claims that Keating's confiscation and destruction of his mail caused actual injury, as he allegedly was unable to serve the defendants in two other cases he was litigating. He claims that the court dismissed one of these cases, and that he dismissed the other case voluntarily because he was unable to serve the defendants. Plaintiff has made a sufficient showing of actual injury as to his claim against defendant Keating.

Plaintiff does not claim that defendant Avila interfered with his right of access to the courts; rather, his claim is that Avila interfered with his first amendment right to send and receive mail. *See Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989). Therefore, he need not prove that his court cases were actually prejudiced with regard to his claim against defendant Avila.

### C.     Silencing Exercise of First Amendment Rights

Defendants also argue that plaintiff's claims against defendants Avila and Keating for "confiscating and destroying legal materials in retaliation for having filed grievances fail[] to rise to the level of a constitutional violation." In the prison context, a viable claim of First Amendment retaliation has five elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal. *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005). Defendants argue that the fourth element is not met because the confiscation and destruction of plaintiff's outgoing mail is "not [a situation] that would silence anyone's first

amendment activities," because "[t]his situation is akin to lost mail." Dckt. No. 34 at 19. Defendants' argument is unconvincing. Plaintiff alleges that the defendants confiscated and destroyed his mail in order to deter him from litigating his cases. Defendants might later submit evidence that the mail was simply lost, not confiscated, but taking plaintiff's allegations as true, defendants intended to deter plaintiff from pursuing litigation, and indeed, plaintiff voluntarily dismissed his case as a result of defendants' actions. The situation, as alleged in the complaint, is not at all "akin to lost mail." Accordingly, defendants' motion to dismiss must be denied as to these claims.

### D. Res Judicata and Collateral Estoppel

Defendants assert that plaintiff's claims against defendants Amero, Barcus, Gordon, Guimond, Park, Patton, Pfadt, and Stiles are barred by the doctrines of res judicata and collateral estoppel. Collateral estoppel, also known as issue preclusion, prevents relitigation of "all issues of fact or law that were actually litigated and necessarily decided in a prior proceeding against the party who seeks to relitigate the issues." *Hawkins v. Risley*, 984 F.2d 321, 325 (9th Cir. 1993). The doctrine of res judicata, or claim preclusion, provides that a final judgment on the merits bars further claims by the parties or their privies based on the same cause of action. *Tahoe-Sierra Pres. Council v. Tahoe Reg'l Planning Agency*, 322 F.3d 1064, 1077 (9th Cir. 2003). The doctrine prohibits the relitigation of any claims that were raised or could have been raised in a prior action. *W. Radio Servs. Co., Inc. v. Glickman*, 123 F.3d 1189, 1192 (9th Cir. 1997).

Defendants claim that plaintiff raised the same set of facts in a federal habeas petition in 2008, which was dismissed after the court directed plaintiff to file a civil rights complaint and plaintiff failed to comply, and in a habeas petition in the Lassen County Superior Court, which was dismissed for failure to exhaust. Dckt. 34 at 20. Defendants admit that res judicata "bars parties . . . from relitigating a cause of action that has received a final judgment on the merits" and that collateral estoppel "bars relitigation of an issue that has been decided in a previous suit,

when . . . the prior suit resulted in a judgment on the merits." *Id.* at 19-20. Defendants conclude that as plaintiff "previously brought this exact set of facts" to other courts, "[i]t would be a complete waste of judicial resources to allow this [p]laintiff to relitigate this set of facts." *Id.* at 21. But defendants do not explain how the elements of res judicata or collateral estoppel are met here. Notably, defendants do not assert that the previous courts' judgments–which they allege were entered as a result of plaintiff's failure to file an amended complaint and failure to exhaust his claims–were adjudicated on the merits. Accordingly, the motion to dismiss must be denied as to this ground.

### E.     Eighth Amendment Claims

Defendants argue that plaintiff's allegations regarding defendants Cox, James, Harvey and Roche are insufficient to state a claim for violation of plaintiff's eighth amendment rights.

Prison officials violate the Eighth Amendment when they engage in "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A prison official is deliberately indifferent when he knows of and disregards a risk of injury or harm that "is not one that today's society chooses to tolerate." *See Helling v. McKinney*, 509 U.S. 25, 35 (1993); *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The official must "be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Deliberate indifference "may be manifested in two ways. It may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir.1988).

Defendants argue that plaintiff received a "multitude of treatment" for his swollen foot, as he was housed in the correctional treatment center, seen by three general practitioners, an osteopath and a podiatrist, and given an ultrasound. Dckt. No. 34 at 21-22. Defendants argue that even if the doctors were negligent in diagnosing plaintiff, their actions do not rise to the

14

1  level of a constitutional violation. *Id.* Defendants contend that plaintiff's allegations against
2  defendants Cox and James are "that they refused to provide plaintiff with any type of medical
3  care," and that the treatment records show that this is false; that his allegation against defendant
4  Harvey amounts to nothing more than a difference of opinion between him and the doctor
5  regarding his condition; and that his allegation against defendant Roche–that Roche knew that
6  the other defendants failed to provide medical care–fails because plaintiff was provided adequate
7  medical treatment. *Id.* at 22-23.

8  Plaintiff declares that he was housed in the correctional treatment center because he was
9  on a hunger strike, which had nothing to do with his foot's condition. Dckt. No. 43 at ¶¶ 76-79.
10 He declares that in January 2006 he told defendants James and Cox that his foot was swollen,
11 that he had excruciating pain in his big toe, and that he had difficulty walking, but that they
12 ignored it "due to being overly concerned about [his] hunger strike." *Id.* He declares that his
13 "left foot became more swollen and painful to walk on, then my left ankle and leg became
14 swollen" so that he had to "hop around" for a month before he received an ultrasound on his left
15 leg on February 6128, 2006 and an x-ray on February 8, 2006 that revealed abnormalities. *Id.* at
16 ¶ 78. He declares that after this defendants James, Cox and Roche refused to prescribe him
17 medication, take blood samples or refer him to a specialist. *Id.* These are not allegations of mere
18 negligence or careless omissions. Rather, plaintiff alleges deliberate decisions to withhold
19 treatment.

20 As to defendant Harvey, plaintiff declares that she became angry with him when he
21 refused her injection therapy because he was afraid of side effects. He declares that she told him
22 that she made her money by administering injections and that she would only help him obtain a
23 soft boot for his swollen foot if he would accept her injections. He declares that, out of anger,
24 she falsified his records to state that his foot condition was alcohol related. *Id.*, ¶¶ 80, 81; Dckt.
25 ////
26 ////

No. 13, at ¶¶ 125. 126.[7]

While defendants purport to bring a motion to dismiss, their arguments dispute the truth of plaintiff's factual allegations rather than show his failure to state a claim upon which relief could be granted. Whether the motion is viewed under Rule 12(b)(6) or under Rule 56, under either standard the motion as presented fails to meet defendants' burden on the motion. As to the sufficiency of the complaint, plaintiff has alleged that defendants Cox and James refused him treatment and that defendant Roche was aware of this and did not give him treatment. Similarly, contrary to defendants' assertion that plaintiff's allegations against defendant Harvey amount to nothing more than a difference in opinion over medical treatment, plaintiff has alleged that defendant Harvey refused to provide any medical treatment because he refused to accept the treatment of her choice. Although defendants dispute the veracity of plaintiff's allegations, under Rule 12(b)(6), the allegations must be taken as true. If defendants intended the motion pursuant to Rule 56, which is not at all clear, all that has been demonstrated by defendants filings is a conclusory dispute over whether plaintiff's allegations can be believed. Defendants have not addressed the summary judgement standards nor shown why they are entitled to summary judgement. Given the inadequacy of the instant motion to comply with Rule 56, and given that discovery has not yet been conducted, it is premature to decide these issues under the summary judgment standard. Accordingly, defendants' motion to dismiss must be denied as to these claims as well.

////

////

---

[7] Exhibits F and G attached to plaintiff's opposition to defendants' motion to dismiss show that plaintiff received an ultrasound and x-rays on February 6, 2006. The x-rays, which appear to have been ordered by defendant James, revealed arthritic changes in his great toe. The radiologist's February 16, 2006, impression was osteoarthritis versus gout, and he recommended clinical correction. It appears that defendant James signed the radiologist's report on April 10, 2006. Exhibit H shows that in 2007 and 2008 other doctors diagnosed plaintiff with gout and recommended medications, a soft boot and orthotics.

16

**III.    Plaintiff's Motion for Court Intervention in Serving Defendant Patton**

On April 26, 2010, plaintiff filed a motion for court intervention in serving defendant W. Patton. Dckt. No. 44. On March 10, 2010, the court ordered plaintiff to provide new information about where defendant Patton could be served with process. The order stated that if plaintiff's access to the required information was denied or unreasonably delayed, he could seek judicial intervention. Plaintiff declares that he made a public records request to the litigation coordinator and was informed that defendant Patton no longer works for the CDCR and his address is protected under the government code.

Plaintiff has demonstrated that the CDCR has refused access to the information necessary to effect service of process on Patton. Defendants have not opposed plaintiff's motion for judicial intervention and it appears that, despite his diligence in seeking the unserved defendants' addresses, plaintiff has been denied access to that information. Accordingly, the court orders defendants' counsel to query the Department of Corrections and Rehabilitation to ascertain the whereabouts of defendant W. Patton. If he is still employed with the Department of Corrections or Rehabilitation or any other California state agency, counsel shall forthwith provide the address to plaintiff. If counsel is otherwise informed of the address of W. Patton, counsel shall provide the address to plaintiff. In the event that counsel, after conducting a good-faith inquiry, cannot ascertain the address of W. Patton, counsel shall so inform the court. Defendants' counsel shall file and serve the appropriate response within thirty days of the date of this order.

**IV.    Conclusion**

Accordingly, it is hereby ORDERED that:

1. Plaintiff's motion for court intervention in serving defendant Patton is granted; and

2. After conducting a good-faith inquiry as to the whereabouts of defendant Patton as set out in section III above, defendants' counsel shall file and serve an appropriate response within thirty days of the date of this order.

////

Further, it is hereby RECOMMENDED that:

1. Defendants' motion to dismiss be denied; and

2. Defendants be ordered to respond to the amended complaint within the time provided in Fed. R. Civ. P. 12.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated:  August 31, 2010.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE